No. 91,875

STATE OF KANSAS, *Appellee,* v. TIMOTHY A. ROBINSON, II, *Appellant.*

(132 P.3d 934)

Opinion filed April 28, 2006.

*Shawn E. Minihan,* assistant appellate defender, argued the cause and was on the briefs for appellant.

*Bobby J. Hiebert, Jr.,* assistant county attorney, argued the cause, and *Ellen Mitchell,* county attorney, and *Phill Kline,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This case arises on petition for review from the Court of Appeals' decision in *State v. Robinson,* 33 Kan. App. 2d 773, 109 P.3d 185 (2005), affirming the district court's assessment of attorney and administrative fees to reimburse the State Board of Indigents' Defense Services (BIDS) against defendant Timothy A. Robinson, II.

We must consider two issues: (1) Whether such an assessment under K.S.A. 2005 Supp. 22-4513 is error if a sentencing judge fails to explicitly consider *sua sponte* at the time of assessment a defendant's ability to pay and the financial burden payment would impose, and (2) whether such an assessment violates a defendant's

due process rights if the sentencing judge fails to consider the validity of the fees at the time of assessment.

Robinson was convicted of felony possession of marijuana and misdemeanor possession of drug paraphernalia. A public defender had been appointed to act as his counsel. Robinson was sentenced to 17 months' incarceration for possession and 90 days for drug paraphernalia and placed on 12 months' probation.

Robinson also was ordered to pay $400 in restitution; approximately $150 in court costs; a $50 probation fee; and $845 in other fees, which included a $745 assessment for attorney fees and a $50 BIDS administrative fee. He was required to begin making monthly payments of $203.46, and his failure to make these payments is among several alleged violations of his probation not at issue here.

On appeal, Robinson challenges the $745 attorney fees assessment and the $50 administrative fee. He argues the sentencing judge violated K.S.A. 2005 Supp. 22-4513 by failing to explicitly consider Robinson's ability to pay and the financial burden payment would impose at the time of the assessment. He also argues the fees were assessed in violation of due process because the judge also did not consider the validity of the fees. Robinson did not object to the fees at sentencing, and he has not petitioned the sentencing court to waive the fees at any other time.

### Standards of Review

Our standard of review of Robinson's statutory challenge is unlimited, because interpretation of statutes raises a question of law. See *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

To the extent we are called upon to interpret the statute, we first attempt to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to express language, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. *State v. Post*, 279

Kan. 664, 666, 112 P.3d 116 (2005); *State v. de la Cerda,* 279 Kan. 408, 411, 109 P.3d 1248 (2005). Stated yet another way, a clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ any of the canons that support such construction. See *State v. Sodders,* 255 Kan. 79, Syl. ¶ 4, 872 P.2d 736 (1994).

Our standard of review on Robinson's due process claim also is unlimited. See *Murphy v. Nelson,* 260 Kan. 589, 594, 921 P.2d 1225 (1996).

### *Statutory Claim*

K.S.A. 2005 Supp. 22-4513 provides in pertinent part:

"(a) If the defendant is convicted, all expenditures made by the state board of indigents' defense services to provide counsel and other defense services to such defendant or the amount allowed by the board of indigents' defense reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less, shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases.

"(b) In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment."

Various panels of our Court of Appeals have split on the statutory issue Robinson raises, *i.e.,* whether K.S.A. 2005 Supp. 22-4513 requires a sentencing court to consider the defendant's financial circumstances at the time BIDS fees are assessed. See, *e.g., State v. Moody,* 34 Kan. App. 2d 526, 532-34, 120 P.3d 1156 (2005) (defendant's financial resources need not be considered at time of assessment); *State v. Ellis,* No. 91,037, unpublished opinion filed June 4, 2004, *rev. denied* 278 Kan. 838 (2004) (consideration of defendant's financial resources must occur when BIDS fees assessed).

Likewise, the panel that took up Robinson's case was divided. Judges Tom Malone and Stephen D. Hill denied relief. They considered the provision in K.S.A. 2005 Supp. 22-4513 for a defense petition to the sentencing court to waive BIDS fees an adequate protection for a defendant's rights. They ruled that Robinson's appeal on the issue was premature, given his failure to object at sentencing or otherwise petition for waiver. 33 Kan. App. 2d at 784.

Judge Richard Greene dissented, saying the waiver provision could not negate the plain, mandatory language of 22-4513(b): "In determining the amount and method of payment . . ., the court *shall* take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." (Emphasis added.) See 33 Kan. App. 2d at 784-86 (GREENE, J., dissenting).

The State argues first that Robinson's appeal is premature. In its view, because the statute specifically allows Robinson to petition for waiver of the fees, he still has a remedy at the district court level that he has not pursued. We acknowledge that Robinson could have petitioned the district court for relief. However, that procedure is permissive. It does not rule out the possibility of an appeal. We also do not, in this particular case, regard the absence of an objection before the district court as fatal. As we have often stated, we may reach an issue on appeal despite a failure to raise it below when the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case. See *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005). In addition, the conflict that has arisen in the Court of Appeals compels us to settle the question to guide litigants, their counsel, and the district courts.

For his part, Robinson opens his arguments by asserting that a sentencing court must *sua sponte* consider a defendant's ability to pay because the governing statute for BIDS fees, K.S.A. 2005 Supp. 22-4513, is analogous to other legislation with similar requirements.

Robinson first compares the BIDS statute to K.S.A. 2005 Supp. 21-4603, which authorizes certain assessments against defendants

convicted of crimes committed prior to July 1, 1993. Subsection (b) of that statute states:

"In addition to any of the above [dispositions], the court shall order the defendant to reimburse the state general fund for all or part of the expenditures by the state board of indigents' services . . . . In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment."

Robinson also calls our attention to K.S.A. 2005 Supp. 21-4610(d)(3). That statute states:

"(d) In addition to any other conditions of probation, suspension of sentence or assignment to a community correctional services program, the court shall order the defendant to . . .:

. . . .

(3) reimburse the state general fund for all or a part of the expenditures by the state board of indigents' defense services to provide counsel and other defense services to the defendant. In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment."

Given the similarity of the language in these two provisions, Robinson is correct that case law interpreting them could be very helpful. Unfortunately, there is no such case law.

Robinson also attempts to compare the BIDS fees at issue here and criminal fines, arguing that a judge is required to make specific findings before imposing a fine, as set forth in *State v. McGlothlin*, 242 Kan. 437, 747 P.2d 1335 (1988).

*McGlothlin* held that, when a defendant is convicted of a felony or a misdemeanor and is sentenced to imprisonment and given a fine, the judge must make specific findings and must state on record that he or she has taken into account the financial resources of the defendant and the nature of the burden that payment of the fine will impose. 242 Kan. at 441. This holding was based on language from K.S.A. 21-4607(3), which governs fines imposed as a punishment either in the alternative to, or in addition to, incarceration or probation.

Robinson's argument based on *McGlothlin* and K.S.A. 21-4607 is without merit. The BIDS fees at issue here are not intended to be punitive; they are not fines or, indeed, any part of the punishment or sanction for the defendant's criminal conduct. Their authorizing provision, K.S.A. 2005 Supp. 22-4513, is more accurately characterized as a recoupment statute.

Recoupment statutes have a controversial history, and earlier versions of the Kansas provision have been examined by this court. See, *e.g.*, *State v. Keener*, 224 Kan. 100, Syl ¶ 4, 577 P.2d 1182 (1978). We need not revisit that history for clues to guide our reading of the current statute, however, unless we determine that the legislature's intent cannot be divined from the clear and unambiguous wording of K.S.A. 2005 Supp. 22-4513. See *Sodders*, 255 Kan. 79, Syl. ¶ 4. Only if there is no plain meaning, or if the statute is ambiguous on its face or as applied to the facts, must we look beyond the text of the enactment itself.

The language of K.S.A. 2005 Supp. 22-4513(b) clearly requires a sentencing judge, "in determining the amount and method of payment" of BIDS reimbursement, *i.e.*, at the time the reimbursement is ordered, to "take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." The language is mandatory; the legislature stated unequivocally that this "shall" occur, in the same way that it stated unequivocally that the BIDS fees "shall" be taxed against the defendant. Compare K.S.A. 2005 Supp. 22-4513(a), (b). The language is in no way conditional. There is no indication that the defendant must first request that the sentencing court consider his or her financial circumstances or that the defendant must first ob-

ject to the proposed BIDS fees to draw the sentencing court's attention to those circumstances.

In addition, and in further response to the State's first argument on this appeal, the fact that the statute also permits a defendant to petition for waiver does not change the mandatory language or mean the waiver procedure is intended as a substitute for the sentencing court's initial consideration of a defendant's finances.

On the contrary, the statute's first two subsections set out four distinct—but logically and temporally related—provisions: (1) BIDS must be reimbursed, and fees to enable such reimbursement must be assessed against convicted defendants and enforced as civil judgments; (2) the sentencing court shall consider the defendant's financial circumstances in setting the amount and payment method of the fees; (3) once the fees are assessed, a defendant may petition for waiver of all or part of the fees; and (4) if such a petition is filed, the court will determine whether payment imposes "manifest hardship" on the defendant and his or her family and, if so, may waive or modify the amount or method of payment.

Although our reliance on the clear and unambiguous wording of the statute at issue means we need not discuss or depend upon legislative history, we note that the history of this statute also supports our decision.

In 1971, Judge Delmas C. Hill of the federal District of Kansas held, in *Strange v. James*, 323 F. Supp. 1230, 1233 (1971), that an earlier version of K.S.A. 22-4513 was unconstitutional. Judge Hill opined:

"We must conclude that Section 22-4513 is unnecessary and therefore excessive. What can be more unnecessary than trying to recoup costs of counsel from an individual already adjudged to be an indigent and by definition unable to stand the very expense in question? In this light it is apparent that the statute needlessly encourages indigents to do without counsel and consequently infringes on the right to counsel as explicated in *Gideon v. Wainwright*[, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963)]."

That case eventually reached the Supreme Court of the United States, which affirmed Judge Hill's result, but on different grounds. *James v. Strange*, 407 U.S. 128, 32 L. Ed. 2d 600, 92 S. Ct. 2027 (1972). The Supreme Court held that there was no denial of the

right to counsel in the strictest sense, because the statute both provided counsel for the indigent and paid that counsel with public funds. 407 U.S. at 134. Nevertheless, the statute violated equal protection, the Court said, because it imposed liability on an indigent defendant for any state expenditures made to provide counsel without any of the protective exemptions available to other civil judgment debtors. 407 U.S. at 135, 140-42.

After the Supreme Court ruling, the legislature amended the statute so that all civil exemptions applied to debts under the recoupment statute. L. 1976, ch. 169, sec. 3.

The statute was challenged again in 1979, and the Tenth Circuit Court of Appeals struck it down as constitutionally deficient under the United States Supreme Court's decision in *Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974). *Olson v. James*, 603 F.2d 150 (10th Cir. 1979).

*Fuller* had focused on an Oregon statute that provided:

"The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of the costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

"A defendant who has been sentenced to pay costs and who is not in contumacious default . . . may, at any time, petition the court which sentenced him for remission of the payment of the costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment . . . ."
*Fuller*, 417 U.S. at 43 n.5 (citing Ore. Rev. Stat. § 161.665(3), (4) [1971]).

The *Fuller* opinion commented favorably on the Oregon statute's inquiry into present and future financial resources of the criminal defendant *at the time fees were initially assessed*. 417 U.S. at 47-48 & n.9, 52-54 & n.12. In particular, the Court observed: "The limitation of the obligation to repay to those who are found able to do so . . . disposes of the argument . . . that revocation of probation for failure to pay constitutes an impermissible discrimination based on wealth." 417 U.S. at 53 n.12. In essence, the Oregon statute passed muster because any potential sanction for failure to pay would be limited from time of assessment forward

to those defendants who *refused* to do so; it would never be permitted to threaten a defendant *unable* to pay.

This point was not lost on the Tenth Circuit, which interpreted the *Fuller* case to require a recoupment statute, among other things, to provide that a convicted defendant not be ordered to pay counsel expenses unless he or she was able to pay or would be able to pay them in the future, when available financial resources and the nature of the burden payment would impose were taken into account. In addition, under *Fuller*, if the defendant upon whom an obligation to repay has been imposed becomes unable to pay, that defendant ought to be able to petition the sentencing court for remission of payment at any time; and the court should have the power to waive payment if it would impose manifest hardship on the defendant or on his or her immediate family. *Olson*, 603 F.2d at 154-55; see *Fuller*, 417 U.S. at 45-46, 52-54.

After the Tenth Circuit's *Olson* decision based on *Fuller*, our legislature amended the Kansas statute again, essentially to its current form. See L. 1981, ch. 157, sec. 2. The timing and substance of this amendment to make the Kansas provision nearly identical to the Oregon provision is revealing about the intention behind the legislature's chosen language, and that intention is borne out by the interpretation we give the statute today.

As we see it, our interpretation of the K.S.A. 2005 Supp. 22-4513 necessitates discussion of three further points.

First, the sentencing court, at the time of initial assessment, must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly*, stating on the record how those factors have been weighed in the court's decision. Without an adequate record on these points, meaningful appellate review of whether the court abused its discretion in setting the amount and method of payment of the fees would be impossible. See *State v. Moncla*, 269 Kan. 61, 65, 4 P.3d 618 (2000) (noting difficulty of reviewing case in which district court failed to state findings, conclusions).

Second, a sentencing court's failure to include such explicit consideration of the defendant's financial circumstances in the record does not render the sentence associated with the resulting assess-

ment "illegal," as that term is used in K.S.A. 22-3504. As we have already said, the assessment itself is not punitive; it is not a punishment or part of the sentence at all. Its connection to a sentence does not convert that sentence to one fitting the narrow definition of "illegal," *i.e.*, a sentence imposed by a court without jurisdiction; a sentence that does not conform to the statutory provision, either in the character or the term of the punishment authorized; or a sentence that is ambiguous with respect to the time and means in which it is to be served. See *State v. Gayden*, 281 Kan. 290, Syl. ¶ 1, 130 P.3d 108 (2006).

Third, and finally, we are sensitive to certain of the points made by our colleague, Justice Luckert, in her concurrence. We recognize that subsection (a) of K.S.A. 2005 Supp. 22-4513 states that taxation of "all expenditures" by BIDS shall occur and that neither subsection (a) nor subsection (b) explicitly states consideration of a defendant's financial resources must occur "at sentencing." However, reading the subsections together, this is their practical effect. The consideration must occur, and sentencing is the proceeding that routinely addresses BIDS reimbursement.

### Due Process Claim

Robinson also argues that his due process rights were violated by the sentencing court's failure to consider the validity of the fees. Without evidence of the validity of the fees, Robinson argues, he did not have an opportunity to contest the amount imposed.

In reviewing a procedural due process claim, this court must determine whether a protected liberty or property interest is involved and, if so, the nature and extent of the process due. *Winston v. Kansas Dept. of S.R.S.*, 274 Kan. 396, 409, 49 P.3d 1274 (2002).

A due process violation can be established only if a claimant is able to show that he or she was denied a specific procedural protection to which he or she was entitled. The question of the procedural protection that must accompany a deprivation of a particular property right or liberty interest is resolved by a balancing test, weighing the individual interest at stake; the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards;

and the State's interest in the procedures used, including the fiscal and administrative burdens that additional or substitute procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).

The basic elements of procedural due process are notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Winston*, 274 Kan. at 409.

Robinson received both notice and an opportunity to be heard. The fees assessed follow a detailed standard cost schedule promulgated by BIDS, which is a matter of public record, and which is reviewed by the presiding judge at assessment pursuant to K.S.A. 2005 Supp. 22-4507. Robinson, his counsel, opposing counsel, and the court had access to this fee schedule and were on notice of the likely amount of fees to be imposed. Had Robinson desired to challenge the amount or validity of those fees at sentencing, he and his counsel had an opportunity to do so. They did not take that opportunity. Balancing the factors set forth above, we conclude that Robinson received all the process he was due on this issue.

On the assessment issue subject to our grant of review, the district court and the Court of Appeals are reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

LUCKERT, J., concurring: I disagree with the majority's conclusion that a sentencing court must consider the defendant's financial resources at the time of assessing fees pursuant to K.S.A. 2005 Supp. 22-4513. This conclusion, in my view, is contrary to the plain and unambiguous language of the provision, specifically subsection (a). I would hold, however, that the sentencing court is required to take the defendant's financial resources into account at the time of determining the amount and method of payment of that sum under subsection (b) and, because the sentencing court did not do so in this case, I agree that remand is appropriate.

The legislature has instructed that we should read words "according to the context and the approved language of the statute." K.S.A. 2005 Supp. 77-201, *Second*. In other words, "[o]rdinary words are to be given their ordinary meaning." *GT, Kansas, L.L.C.*

*v. Riley County Register of Deeds,* 271 Kan. 311, 316, 22 P.3d 600 (2001). The legislature has further directed that "words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meaning." K.S.A. 2005 Supp. 77-201, *Second;* see *Rose v. Via Christi Health System, Inc.,* 279 Kan. 523, 527, 113 P.3d 241 (2005). These rules are applied under the presumption that the legislature expressed its intent through the language it enacted; that legislative intent governs a court's interpretation of the statute. *Pieren-Abbott v. Kansas Dept. of Revenue,* 279 Kan. 83, 88, 106 P.3d 492 (2005).

K.S.A. 2005 Supp. 22-4513(a) provides in relevant part that the State Board of Indigents' Defense Services (BIDS) fees "shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases." "Shall" is defined as "[h]as a duty to; more broadly, is required to." Black's Law Dictionary 1407 (8th ed. 2004). While it has also been defined to mean directory, as opposed to mandatory, the former is related to matters of mere form, not substance as here. See *Wilcox v. Billings,* 200 Kan. 654, 657 438 P.2d 108 (1968) (whether a statute is directory or mandatory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form). Thus, the amount, as specified by the statute, must be "taxed." The word "tax" distinguishes the fees from a punishment and also determines the level of priority the claim will receive when there are multiple claimants seeking recovery of an asset held by the defendant. See, *e.g.,* K.S.A. 75-6211(a) (provision relating to a person's assets in the control of the State—such as tax refunds or lottery proceeds— being setoff against taxes or other debts, giving highest priority to taxes).

K.S.A. 2005 Supp. 22-4513(a) specifies the amount is to be enforced as a civil, as opposed to criminal, judgment. Thus, BIDS has the ability to utilize enforcement procedures established by law. One such enforcement procedure provided under K.S.A. 2005 Supp. 22-4504(c) and 22-4513(c) allows the State to recover the fees from third parties to whom a defendant has transferred property without adequate consideration. Under these provisions, "[a]

determination by the court that the defendant is financially unable to employ counsel or pay other costs of the defendant's defense may preclude a recovery from the defendant but may not preclude recovery from any person to whom the defendant may have transferred or conveyed any property without adequate monetary consideration after the date of the commission of the alleged crime." K.S.A. 2005 Supp. 22-4504(c); K.S.A. 2005 Supp. 22-4513. See also K.S.A. 22-4510 (relating to reimbursement of BIDS attorney fees and providing "[w]henever the court finds that funds are available for payment from *or on behalf of a defendant*, the court shall direct that such funds be paid to the court for deposit in the state treasury to the credit of the state general fund." [Emphasis added.]).

Contrary to the majority's holding, the provisions of K.S.A. 2005 Supp. 22-4513(a) do not impose a requirement that the sentencing court take into consideration the defendant's ability to pay when assessing the fees. Rather, under the plain language of the provision, the court is to assess either (a) the amount of actual expenditures for providing counsel and other defense services or (b) the amount allowed by the BIDS' defense reimbursement tables, whichever is less. Statutes relating to the appointment of counsel and the payment of attorney fees impose upon the court the obligation to examine ability to pay at two other points in time: (1) when counsel is appointed and (2) when the court requires any payment of the fees.

K.S.A. 2005 Supp. 22-4504 imposes the first requirement—that inquiry be made into a defendant's financial resources at the time counsel is appointed. That statute provides that when a defendant claims to be financially unable to employ counsel, "the court shall require that the defendant file an affidavit" in the form required in regulations promulgated by BIDS. See K.A.R. 105-4-3. That affidavit presents the court with the information necessary to make the determination of whether the defendant is financially able to employ counsel. The statute specifies the considerations for this decision:

"In making such determination the court shall consider the defendant's assets and income; the amount needed for the payment of reasonable and necessary expenses incurred, or which must be incurred to support the defendant and the defendant's

immediate family; the anticipated cost of effective representation by employed counsel; and any property which may have been transferred or conveyed by the defendant to any person without adequate monetary consideration after the commission of the alleged crime. If the defendant's assets and income are not sufficient to cover the anticipated cost of effective representation by employed counsel when the length and complexity of the anticipated proceedings are taken fully into account, the defendant shall be determined indigent in full or in part and the court shall appoint an attorney as provided in K.S.A. 22-4503, and amendments thereto." K.S.A. 2005 Supp. 22-4504(b).

The second circumstance when an inquiry of the defendant's ability to pay must be made is whenever the court requires payment by the defendant. For example, K.S.A. 2005 Supp. 22-4513(b) requires: "In determining the amount and method of payment of such sum [imposed under K.S.A. 2005 Supp. 22-4513(a)], the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." See also K.S.A. 2005 Supp. 21-4603d(d) (requiring defendant to reimburse county for defense expenses incurred by county unless court finds manifest hardship); K.S.A. 2005 Supp. 21-4610(d)(3) (requiring reimbursement as condition of probation unless court finds manifest hardship).

In this case, the sentencing court required the defendant to make monthly payments as a condition of probation, as required by K.S.A. 2005 Supp. 21-4610(d)(3), but did not make findings required by K.S.A. 2005 Supp. 22-4513(b). Thus, I agree with the majority that this matter must be remanded for the findings required by K.S.A. 2005 Supp. 22-4513(b). However, the legislature has distinguished between the taxation of the fees and an order to pay the fees. The distinction may be significant in another case and this court should not blur a distinction which the legislature has made.