No. 116,979

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FREDERICK OWENS,
*Appellant*.

SYLLABUS BY THE COURT

Finding a defendant criminally liable for the failure to pay the $20 registration fee under the Kansas Offender Registration Act violates the defendant's procedural-due-process rights as applied in this case because the defendant had no reasonably available path to get a court finding of indigency.

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed January 12, 2018. Reversed and vacated.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Christopher L. Schneider*, assistant district attorney, *Mark A. Dupree Sr.,* district attorney, and *Derek Schmidt,* attorney general, for appellee.

Before MALONE, P.J., LEBEN, J., and KEVIN P. MORIARTY, District Judge, assigned.

LEBEN, J.: Under Kansas law, convicted sex offenders must register four times a year with their local sheriff. Each time, they must pay the sheriff a $20 registration fee— and failing to pay the fee is a crime.

Twenty dollars is not a lot of money. But it's easy to imagine circumstances in which a convicted sex offender—publicly identified in the community through this registration—might have trouble getting a job. And other events, like illness or disability, might intervene too.

Understandably, you can't imprison someone in the United States simply because the person has no money; doing so would violate the Fourteenth Amendment to the United States Constitution. *Bearden v. Georgia*, 461 U.S. 660, 661, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983). So the Kansas Legislature has provided a way for an offender to be excused from having to pay the fee on account of indigency. It's the process for being excused from the $20 registration fee that's at the heart of Frederick Owens' case.

The statute providing an exception for offenders who can't afford the $20 registration fee applies only when, "*prior to* the required reporting *and within the last three years*, [the offender has] been determined to be indigent by a court of law, and the basis for that finding is recorded by the court." (Emphasis added.) K.S.A. 2014 Supp. 22-4905(k)(3). What the statute doesn't do is tell an offender how to get a court determination of indigency before the required reporting period or specifically authorize a court proceeding for that purpose.

Owens has challenged the constitutionality of this statute—as applied to him—on the ground that he wasn't given procedural due process. Specifically, he argues a denial of due process "by the State's failure to inform him concerning his right to have the registration fee waived and the process he was required to follow to obtain the waiver." We agree that the State didn't provide sufficient process to Owens because the applicable statute didn't explicitly give him a way to get before a judge who could determine whether he was too poor to pay the $20 fee. Because Owens was denied due process, we reverse his convictions.

With that overview, let's review Owens' case and the issue before us more fully. He's required to register because of a 2003 conviction for aggravated indecent liberties with a child. That triggered the requirement that he register with the sheriff four times a year—and that he pay a $20 registration fee each time. See K.S.A. 2014 Supp. 22-4905(k). Failing to pay the fee is a crime (a misdemeanor the first time, a felony after that). K.S.A. 2014 Supp. 22-4903(c)(3).

Owens claims he wasn't able to pay the registration fee in January, April, and July 2014 because he had been injured, couldn't work for medical reasons, and also had to make child-support payments. The State responds that Owens could have "request[ed] a court to find that he [was] indigent." The State has not argued on appeal that Owens was not actually indigent or that he was able to pay the fee.

Some evidence was presented at a preliminary hearing on Owens' interactions with the sheriff's office. Owens said he told personnel there that he couldn't afford the fee and that no one told him he could seek an indigency determination from the court. An officer who interacted with Owens, Lisa Williams, testified that she told Owens to "talk to an attorney" about getting a waiver, though she conceded that folks seeking an indigency determination weren't likely to be able to afford an attorney.

So what could Owens have done? It's not clear, even to us, that he had any way to get a court determination of indigency that would have eliminated his criminal responsibility. And that doesn't meet minimal standards for due process.

Due process rights come into play when the government seeks to take a person's interest in liberty or property. Here, of course, the State prosecuted Owens for a crime, and he could have been imprisoned. The district court gave him a 12-month probation (with an underlying 12-month prison sentence that would be served if he didn't successfully complete probation). But even probation or parole is an infringement on a

3

person's liberty interests that requires due process; after all, if probation or parole is revoked, the person goes to jail or prison. See *Young v. Harper*, 520 U.S. 143, 147-48, 152, 117 S. Ct. 1148, 137 L. Ed. 2d 270 (1997); *Albright v. Oliver*, 510 U.S. 266, 278, 144 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (Ginsburg, J., concurring). And Owens was convicted of three crimes, two of them felonies. The State agrees on appeal that "an offender has a significant liberty interest [at stake] if indigent and unable to pay the registration fee."

When a protected liberty or property interest is involved, we must then determine what process or procedures the person is entitled to. *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, Syl. ¶ 7, 291 P.3d 1056 (2013); *In re J.D.C.*, 284 Kan. 155, 166, 159 P.3d 974 (2007). While there's no one-size-fits-all answer about the procedure to follow—it depends based on the interests involved—the basic requirements are that the person receive notice of the governmental action that would limit a liberty or property interest and an opportunity to be heard. See *Goldberg v. Kelly*, 397 U.S. 254, 267-68, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 22, 287 P.3d 855 (2012); *State v. Robinson*, 281 Kan. 538, 547-48, 132 P.3d 934 (2006); 3 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure § 17.8(h) (5th ed. 2012). Owens' rights were violated because he wasn't given an opportunity to be heard on his indigency claim before he had committed the offense.

Two aspects of the situation are critical. First, failing to pay the fee is an absolute-liability offense. Once Owens failed to pay, he had committed the offense and couldn't later use indigency as a defense. See K.S.A. 2014 Supp. 21-5203(f); K.S.A. 2014 Supp. 22-4903; K.S.A. 2014 Supp. 22-4905. Second, consistent with that first point, Owens had to have a court determine his indigency *before* the reporting date. K.S.A. 2014 Supp. 22-4905(k)(3) waives the registration fee only when "*prior to* the required reporting and within the last three years" there has been a court determination of the offender's indigency. (Emphasis added.)

4

The problem is that the statute didn't provide any procedure for Owens to seek that court determination. What should Owens have filed? Would the clerk have accepted it and sent it on to a judge for review? Would the judge have considered it a valid proceeding and gone on to make an indigency determination? We can't be at all sure of the answer to any of those questions, and the statute says nothing about them. Even if we assume that there is some implied grant of jurisdiction to the district court to handle some sort of miscellaneous action to make this determination, given the uncertainties and lack of direction, this can't be sufficient process to meet constitutional requirements when a person's liberty is at stake.

In sum, no one gave Owens notice of a procedure he could use to get a court to determine he was unable to pay the $20 before his registration dates. Nor has the Legislature provided any clear guidance about how one might do so. We conclude that Owens' right to procedural due process was violated.

Owens has asked us to address only his own situation; he has challenged the constitutionality of the statute as applied to him, not in a more general way. We therefore address only that application. There could be other situations in which a defendant has adequate access to procedures for establishing indigency. For defendants who have had a criminal case pending within the three-year window before a registration date, for example, there's a recognized procedure for indigency determinations. See K.A.R. 105-4-1(a) (2016 Supp.). In Owens' case, his conviction was from 2003 and we have no information that he had any other criminal proceedings until after he had failed to pay these registration fees.

Before we close our opinion, we note two items that haven't directly affected our ruling. First, the State didn't charge Owens with any of the three offenses until all three had been committed. Had the State charged the first one shortly after it happened, Owens

5

would have had a way to present his indigency claim so as to avoid the later charges (assuming the court found him indigent). But since the State didn't charge any of the offenses until all three had been committed, no pending criminal case gave Owens a path to present his indigency claim to a judge. Second, we note that the public-safety interests underlying the Kansas Offender Registration Act were met in Owens' case. He never failed to register and provide the required information to the sheriff; he simply claimed a temporary inability to pay the registration fee.

We reverse Owens' convictions and vacate his sentences.